**IN RE ESTATE OF JOSEPH ALEXANDER, Deceased**

Probate No. 42-1973

District Court of the Virgin Islands

Div. of St. Croix

December 17, 1974

ISHERWOOD & COLIANNI, ESQS. (JAMES H. ISHERWOOD, of counsel), Christiansted, St. Croix, V.I., *for estate of Alexander*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND ORDER

### SUR CLAIM OF BERNHARDT SHANDERSON

The co-executors rejected the Creditor's Claim filed by Bernhardt Shanderson ("Shanderson") and Shanderson has requested the Court to redetermine his claim against the estate. An in-chambers hearing was held, the testimony of certain witnesses was received and arguments of counsel were heard. The facts are involved but are not in dispute.

Shanderson bought Plot No. 233 of Estate Richmond, Christiansted in 1957 and built a tenement building thereon. In 1967, he suffered a judgment in a suit brought by Roger Parris. [Civil No. 54-1967.] On execution of that judgment, a sale was made by the Marshal and a Certificate of Purchase was issued to Roger Parris. The sale was confirmed February 28, 1969.

Shanderson brought his financial problems to Joseph Alexander the deceased herein ("Alexander") who, in turn as a favor to his friend Shanderson, paid the amount of the judgment to Roger Parris and on May 2, 1969 was assigned the Certificate of Purchase. Alexander notified all tenants of the tenement building by letter of June 10, 1969, that all rents would thereafter be paid to Joseph Alexander. He opened account ledgers on his books for all

rents collected from the tenement, crediting same to the account of Shanderson as the owner. In brief, Alexander began to manage the property, applying all rents received, firstly to the monthly mortgage payments to the First Federal Savings and Loan Association, which bank had a first priority mortgage lien on the property securing an original loan given to Shanderson. Then payments were applied to expenses of management such as repairs, insurance and taxes; then, to his management commission, and lastly, but regularly, to Shanderson's account, which included an old outstanding indebtedness from Shanderson to Alexander.

This management relationship functioned very amiably and effectively over a period of years—to the point where Alexander was reimbursed all monies that he paid to Roger Parris. Thereafter, Shanderson stepped in by collecting some of the rents himself. This caused a breakdown of the relationship, and Alexander demanded Shanderson to pay to him the balance of the monies still owing from Shanderson to Alexander—which, as of May 14, 1973, was $2,941.17. Due to lack of funds, Shanderson could not pay. So then, Alexander turned to Shanderson's half brother O'Neal D. Christian ("Christian") (or perhaps, O'Neal Christian came to Alexander) and offered to transfer to Christian the Parris Certificate of Purchase for $2,941.17 (the balance of Shanderson's account).

At this time, Christian consulted a lawyer to check title. The lawyer made a title research and consulted with officers of The First Federal Savings and Loan Association concerning the outstanding balance of Shanderson's First Mortgage Loan to it. Also, Christian himself conferred with Alexander and his half brother Shanderson regarding the status of the account between them. At this point, I quote from the attorney's letter of May 9, 1974 to Shander-

son's attorney regarding his title research and the facts which were uncovered and disclosed to Christian:

"Further checking revealed that Roger Parris had received the certificate of sale on February 28, 1969 from Marshall Roberts. Further checking revealed that the sale to Parris had been confirmed by the Court on February 28, 1969 by Albert B. Marris in Civil No. 54/1967. At the time of Mr. Christian's inquiry concerning a purchase of the property from Joseph Alexander, he was owed $8,000.00 on a promissory note from Bernhardt Shanderson, plus interest at the rate of 6% from June 9, 1968. The note was secured by a 'first priority mortgage' but an examination of the recorder's records revealed that the 'first priority mortgage' was subsequent to and subject to the first mortgage with First Federal Savings and Loan Association, the tax lien and the certificate of sale, which had been assigned to Joseph Alexander. When Joseph Alexander was approached by Mr. Shanderson, he said that as of May 16, 1973, $2,941.17 was owed to him by Bernhardt Shanderson and that if Mr. Christian would pay him that amount, he would assign his certificate of sale to Mr. Christian. It was my advice to Mr. Christian to purchase the certificate of sale from Joseph Alexander, as that was the only way he could protect the amount due on the note from Mr. Shanderson. The amount was paid to Mr. Alexander on about said date and Mr. Alexander conveyed an assignment of mortgage to Mr. Christian. I advised Mr. Christian that the assignment of mortgage was worthless and that he needed an assignment of certificate of sale, which I subsequently prepared and which Mr. Alexander executed on August 14, 1973.

I am sending a copy of this letter, with the enclosures to Isherwood, Colianni, Alkon & Barnard to keep them apprised of the situation as attorneys for the Estate of Joseph Alexander. At this time, Mr. Christian is willing to convey the property to the Estate, or to Mr. Shanderson for sums due him and for his expenses (approximately $15,000.00).

Copies of the promissory note from Shanderson to Christian and 'first priority mortgage' from Shanderson to Christian, and assignment of mortgage from Alexander to Christian, and assignment of certificate of sale from Alexander to Christian are enclosed."

Christian turned in his Certificate of Purchase to the Deputy U.S. Marshal and received a Marshal's deed to

the property on October 5, 1973. Joseph Alexander died on December 6, 1973. On February 27, 1974, Shanderson filed this claim sub judice against the estate for $80,000.00 being his estimate of the worth of the property which he claims was wrongfully sold by Alexander to Christian in violation of a constructive trust. He recorded a Lis Pendens against the property on February 27, 1974. By letter of June 12, 1974, Christian's lawyer wrote to Shanderson's lawyer and demanded the removal of the Lis Pendens as an unwarranted slander on Christian's title, affecting his "attempts to dispose of the subject property". Although Christian offered Shanderson the opportunity to recover his tenement property upon payment of "sums due him and for his expenses (approximately $15,000.00)" Claimant's Exhibit 2, letter dated May 9, 1974, the offer was apparently refused by Shanderson and has now been withdrawn.

The attorney for the co-executors herein and the attorney for the claimant both felt at the hearing that O'Neal Christian was or is a "bona fide purchaser for value" and therefore, should have clear title to the tenement property. Furthermore, claimant's attorney has already removed the Lis Pendens which he recorded against the property. However, I disagree. Under all the circumstances and in light of the facts which were made known to O'Neal Christian at the time he acquired the Certificate of Purchase, I find that he voluntarily continued the same "constructive trust" over the property that was created by Alexander's acquisition of the Certificate of Purchase. Alexander never treated his acquisition as a "purchase" of property. According to his books and the manner in which he managed the property, he obviously acquired his interest from the Marshal's sale only to serve as security for the ultimate repayment of all monies due to him from Shanderson. I find that in paying Alexander the $2,941.17 balance still owing to Alexander from Shanderson, Christian was fully advised

of that relationship and that he "bought in"—or, as another way of describing it—"took over" the same kind of security to secure Shanderson's indebtedness to him. He is in no better position than was Alexander.

It is my conclusion that O'Neal Christian is a necessary party herein and I will defer any final judgment until he is before the Court. There should be a full trial held on the merits of Christian's position vis-a-vis the claimant Shanderson. Before Shanderson should be able to recover his tenement building at Estate Richmond, he should be required to pay Christian all sums that he owes to Christian with interest thereon, and, in addition, all expenses and attorney's fees incurred by Christian. When this is done, the two constructive trusts will have served their purposes, two creditors (Alexander and Christian) will have recovered in full all monies owed to them by Shanderson, and Shanderson will have his tenement back again. There will then be no need to make a determination of the value of the tenement as a substitute for restoration of the title thereof to its rightful owner.

As of the day of dictating this memorandum (December 13, 1974) I am having the Lis Pendens reactivated and recorded on the property as a judicial notice of this pending litigation.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED that final determination of the claim of Bernhardt Shanderson shall be reserved until such time that O'Neal Christian shall be impleaded or otherwise proceeded against in a plenary action and there shall be an adjudication of his right and title to the property involved in this claim.